UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT


Zhi He and Qi Yue,              :
        Plaintiffs,              :
                                 :
        v.                       :     File No. 2:07-CV-14
                                 :
Michael Chertoff,                :
Secretary of the                 :
Department of Homeland           :
Security, et al.,                :
        Defendants.              :


                         OPINION AND ORDER
                      (Papers 17, 22 and 24)

    Plaintiffs Zhi He and Qi Yue are a married couple living in the United States with temporary immigration status.  In December 2004, they applied to the United States Citizenship and Immigration Services of the Department of Homeland Security (CIS) for an adjustment to permanent resident status.  To date, CIS has not ruled on their applications.  Proceeding *pro se*, the plaintiffs now ask this Court for a writ of mandamus compelling CIS to expedite the process and to adjudicate the pending applications.[1]

---

[1]  The plaintiffs initially requested that their petitions be approved.  They have since moved to amend their complaint to remove this request.  The motion to amend (Paper 22) is GRANTED.  The government's unopposed motion for extension of time in which to file a reply memorandum (Paper 24) is also GRANTED.

The defendants have moved to dismiss for lack of subject matter jurisdiction and failure to state a claim (Paper 17).  The defendants argue, *inter alia*, that the Court has no jurisdiction over CIS's discretionary duties, and that the plaintiffs are not entitled to a writ of mandamus.  For the reasons set forth below, the defendants' motion is DENIED.

## Factual Background

On December 2, 2004, the plaintiffs each filed an I-485 application with CIS for adjustment of their immigration status to that of permanent resident.  Over two and a half years later, the application remains pending with CIS.  The defendants concede that the delay is attributable to mandatory security checks being performed by the Federal Bureau of Investigations (FBI).

The defendants inform the Court that CIS conducts "several forms of security and background checks to ensure that [an applicant for adjustment of immigration status] is eligible for the benefit and that he or she is not a risk to national security or public safety." (Brouillette Decl. ¶ 3).  The background checks currently include an FBI fingerprint check, a check against

Interagency Border Inspection System (IBIS) records, and an FBI name check.  Id.  In this case, CIS is currently waiting for the outcome of plaintiff He's FBI name check. Id. ¶ 15.  Because He is the principal applicant, and his wife the "derivative" applicant, the plaintiffs' applications cannot be processed before He's background check is complete.  Id. ¶ 16.

The FBI received the plaintiffs' name check requests on or about December 22, 2004.  (Cannon Decl. ¶ 22). Plaintiff Yue's name check was completed the same day, and forwarded to CIS "in due course."  Id. ¶ 23. Plaintiff He's name check was also received by the FBI on December 22, 2004, but has not yet been completed.  Id. ¶ 23.  According to the Declaration of Michael A. Cannon, Section Chief of the National Name Check Program Section at the Headquarters of the FBI, name checks are conducted in the order that they are received.  Id. ¶ 19.  However, there are factors that may delay the processing of a name check, including the number of matches or "hits" that must be retrieved and reviewed.  Id. ¶ 20; (Cannon Decl. II ¶ 22).[2]

---

[2]  Cannon has submitted a second declaration, attached to the defendants' reply memorandum, which the Court will reference

3

The defendants also submit that there is a significant case backlog, due in part to the re-submission of 2.7 million names for additional review after September 11, 2001. (Cannon Decl. ¶ 18). Of those 2.7 million names, over 440,000 indicated that the FBI might have additional information. Id. The FBI is still in the process of resolving those 440,000 requests. The defendants have not offered any reasons why He's FBI security check, specifically, has been delayed.

The plaintiffs claim that they have inquired about the status of He's application four times in the past two years. Plaintiff He has also sought assistance from Congressman Sanders, Senator Jeffords, and the Assistant Director of the Records Management Division of the FBI. Until they receive a decision on their applications, the plaintiffs are unable to travel or work without restrictions, and are not accruing time to be eligible for naturalization.

The plaintiffs allege that although their 2004 applications remain pending, CIS is processing applications filed in 2006. Accordingly, their complaint

---

as "Cannon Decl. II".

claims that the defendants "have failed to adhere to their own regulations and have improperly denied the processing of Plaintiffs' applications . . . . The Defendants' delay in this case is as a matter of law, arbitrary and not in accordance with the law." (Amended Compl. ¶¶ 23-24). The plaintiffs contend that they are entitled to a writ of mandamus, and that the defendants have violated the Administrative Procedures Act's ("APA") requirement that federal agencies act in a timely manner.

The defendants now move to dismiss, arguing: (1) that the Immigration and Nationality Act ("INA") strips the Court of jurisdiction over the adjudication of permanent resident applications; (2) that the Court lacks jurisdiction under the federal mandamus statute; (3) that judicial review under the APA is precluded when an action is committed to agency discretion; and (4) that the plaintiffs have failed to state a claim since the delay is unavoidable.

Discussion

I. <u>Motion to Dismiss Standard</u>

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint

as true, and draw all reasonable inferences in favor of the plaintiff.  See Cleveland v. Caplaw Enterp., 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005).  The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks omitted).  As plaintiffs in this case are proceeding *pro se*, the Court will "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests."  Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 145-46 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)).

With respect to subject matter jurisdiction, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1).  In addition to the allegations in the complaint, a district court reviewing

6

the issue of subject matter jurisdiction may consider evidence outside of the pleadings, including affidavits. <u>Makarova</u>, 201 F.3d at 113; <u>Antares Aircraft, L.P. v. Fed. Rep. of Nigeria</u>, 948 F.2d 90, 96 (2d Cir. 1991).

   Here, the government has offered affidavits with respect to its arguments under both Rule 12(b)(1) and Rule 12(b)(6).  The government submits these affidavits to show that the plaintiffs' petitions are, in fact, being adjudicated, and that its actions have been reasonable.  To the extent that the government's affidavits pertain to the issue of subject matter jurisdiction, and consistent with the authority cited above, the Court may consider them in reaching its decision.

II.   <u>Whether the INA Prevents Review</u>

   The INA, 8 U.S.C. § 1252(a)(2)(B), bars federal courts from reviewing "any judgment regarding the granting of relief under section . . . 245 [8 U.S.C. § 1255]" or any other "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title [8 USCS §§ 1151 *et seq.*] to be in the discretion of the Attorney

General or the Secretary of Homeland Security. . . ."[3]
The plaintiffs' I-485 applications fall within the general purview of § 1252(a)(2)(B).  See 8 U.S.C. § 1255.

It is clear from the text of the INA that a final decision on an adjustment of status application is discretionary and is barred from review.  8 U.S.C. §§ 1252(a)(2)(B), 1255(a).  It is also clear that CIS has a non-discretionary, mandatory duty to act on applications.  See Kim v. Ashcroft, 340 F. Supp. 2d 384, 389 (S.D.N.Y. 2004); Yu v. Brown, 36 F. Supp. 2d 922, 931 (D.N.M. 1999).  District courts are divided however, on the question of whether the *pace* of adjudication is a "decision or action" that is discretionary, and thus

---

[3]  Federal law grants authority to the Attorney General to adjust the status of an alien to permanent resident status.  8 U.S.C. § 1255(a).  The law provides that:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . .

Id.  Although the text of § 1255 refers to the Attorney General, authority to adjudicate adjustment of status applications has been transferred to the Secretary of the Department of Homeland Security and CIS.  See 6 U.S.C. §§ 271(b)(5) and 557.

barred from review.[4]

Some courts have held that the term "action" "'encompasses any act or series of acts that are discretionary within the adjustment of status process,' including the pace of [adjudication]." Grinberg v. Swacina, 478 F. Supp. 2d 1350, 1353-55 (S.D. Fla. 2007) (quoting Safadi v. Howard, 466 F. Supp. 2d 696, 700 (E.D. Va. 2006)); see also Sharif, 2007 WL 2045489, at *4-*6 (N.D. Ill. July 18, 2007) (collecting cases).  In Safadi, the court rejected the plaintiff's argument that § 1252 applied only to final adjudications, concluding that such a reading would "impermissibly render the word 'action' superfluous."  466 F. Supp. 2d at 697.[5]  The Safadi holding has been endorsed by subsequent district court decisions.  See, e.g., Sharif, 2007 WL 2045489, at *5; Grinberg, 478 F. Supp. 2d at 1354; Serrano v.

---

[4]  The Court has found no appellate authority directly on point, and therefore turns to other district courts for guidance.  See Sharif v. Chertoff, 2007 WL 2045489, at *2 (N.D. Ill. July 18, 2007).

[5]  The Safadi court stated that its decision did not address "the question whether jurisdiction would exist in a district court to review plaintiff's case where [CIS] refused altogether to process an adjustment application or where the delay was so unreasonable as to be tantamount to a refusal to process the application."  466 F. Supp. 2d at 700.

9

Quarantillo, 2007 WL 1101434, at *3 (D.N.J. April 9, 2007).

A majority of courts, however, have held that the INA does not divest them of jurisdiction over the pace of adjudicating applications. See, e.g., Yong Tang v. Chertoff, 2007 WL 1821690, at *4 (D. Mass. June 26, 2007); Pool v. Gonzalez, 2007 WL 1613272, at *2 (D.N.J. June 1, 2007) ("the majority of federal courts that have considered similar claims have found that subject matter jurisdiction exists"); Koren v. Chertoff, 2007 WL 1431948, at *4 (D. Conn. May 14, 2007); Duan v. Zamberry, 2007 WL 626116 (W.D. Pa. Feb. 23, 2007).  For example, in Yong Tang the court determined that in barring jurisdiction over a "judgment," Congress did not intend "to immunize the government from all claims based on conduct – even clear wrongdoing – that happens to relate the adjustment of status process."  2007 WL 1821690, at *3.  The court further found that a "decision or action" is only protected from review when it has been specified as discretionary by the INA.  Id.; see also Koren, 2007 WL 1431948, at *4.  A review of the statute reveals that the INA "'does not address, much less specify any

discretion associated with, the pace of the application process.'"  Id. at *4 (quoting Duan, 2007 WL 626116, at *2); see Koren, 2007 WL 1431948, at *4 ("there is nothing in the statute to suggest that the speed of adjudication is discretionary").  Yong Tang found this lack of specification particularly notable in light of "the care taken in the INA to specify the *substance* of an adjustment of status decision as discretionary."  Yong Tang, 2007 WL 1821690, at *4 (emphasis in original).

Given that the pace of adjudication has not been specified as discretionary, Yong Tang found that the INA, 8 U.S.C. § 1252(a)(2)(B)(ii), does not divest it of subject matter jurisdiction over the plaintiffs' claims.  Construing this same provision, the Second Circuit reached the same conclusion albeit in somewhat different circumstances.  In Sanusi v. Gonzalez, 445 F.3d 193, 198-99 (2d Cir. 2006), the court held that although an Immigration Judge's decision not to grant a continuance is discretionary, granting a continuance is not "specified under [the relevant] chapter to be in the discretion of Attorney General . . . .  We therefore hold that 8 U.S.C. § 1252(a)(2)(B)(ii) does not deprive of us

11

of jurisdiction to review decisions by IJs to grant or deny continuances . . . ."  The <u>Sanusi</u> court also noted that its holding "accords with our general presumption in favor of judicial review."  445 F.3d at 199.

In light of the <u>Sanusi</u> decision, and finding the reasoning of <u>Yong Tang</u>, <u>Koren</u> and other courts in the majority on this issue to be persuasive, the Court concludes that the INA does not divest it of subject matter jurisdiction over the plaintiffs' claims.  The Court will therefore proceed to consider the defendants' arguments under the APA, the mandamus statute, and Rule 12(b)(6).

III.  <u>Jurisdiction Under the APA</u>

While the INA may not bar jurisdiction generally, the Court still needs a positive basis for subject matter jurisdiction.  The plaintiffs argue that the government has violated the APA's requirement that each agency shall conclude a matter presented to it "within a reasonable time."  5 U.S.C. § 555.  Moreover, a district court may "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

The defendants contend that the APA bars

jurisdiction where "agency action is committed to agency discretion by law."  5 U.S.C. § 701(2).  As discussed above, a decision whether to grant or deny a petition is, by statute, discretionary.  "The question whether to *adjudicate* an adjustment application, however, is not discretionary, but is governed by section 6 of the APA, which requires CIS to take action on applications presented to it 'within a reasonable time.'"  Koren, 2007 WL 1431948, at *5 (quoting 5 U.S.C. § 555(b)).  If the Court were to conclude otherwise,

> the CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so.  Such an outcome defies logic – the CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely.  This result is explicitly foreclosed by the APA.

Kim v. Ashcroft, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004); see also Koren, 2007 WL 1431948, at *6.

Furthermore, the Court finds that the complaint in this case is not "patently without merit."  See Koren, 2007 WL 1431948, at *6 (APA brings action within federal question jurisdiction so long as claim is not 'patently without merit') (citations omitted).  The plaintiffs bring this action after two and half years of waiting,

and claim that more recently-filed applications are being processed while theirs awaits a decision.  Accordingly, the Court has subject matter jurisdiction under the APA.

IV. <u>Mandamus Jurisdiction</u>

The defendants next argue that the Court has no jurisdiction under the federal mandamus statute, 28 U.S.C. § 1361.  The statute provides that district courts shall have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  <u>Id.</u>  The Second Circuit has established three prerequisites to the issuance of a writ of mandamus: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available."  <u>Anderson v. Bowen</u>, 881 F.2d 1, 5 (2d Cir. 1989).  A writ of mandamus "will issue only to compel the performance of a 'clear nondiscretionary duty.'"  <u>Pittston Coal Group v. Sebben</u>, 488 U.S. 105, 121 (1988) (quoting <u>Heckler v. Ringer</u>, 466 U.S. 602, 616 (1984)).

As discussed above, CIS has a clear and non-

discretionary duty to adjudicate the plaintiffs' applications. "Where the agency in charge of the adjudication fails to render a decision within a reasonable period of time, as required by § 555(b), the Court has the power to grant a writ of mandamus compelling an adjudication." Am. Acad. of Religion v. Chertoff, 463 F. Supp. 2d 400, 420 (S.D.N.Y. 2006). This rule applies here. "Since CIS' obligation to *adjudicate* adjustment of status applications is clearly prescribed, the failure to do so within a 'reasonable' period of time triggers mandamus jurisdiction in federal court." Koren, 2007 WL 1431948, at *7. Further, there is no dispute that the plaintiffs have exhausted their administrative remedies. The Court therefore concludes that the plaintiffs have no other adequate remedy other than to seek judicial relief, and that jurisdiction under the mandamus statute is appropriate.

V.  Failure to State a Claim Under Rule 12(b)(6)

The defendants' final argument is that the delay in this case in unavoidable. While the defendants have submitted affidavits to explain the delay in general terms, they have not explained why He's name check is

taking so long.  Consequently, the Court is unable to conclude that the plaintiffs will be unable to prove any set of facts which would entitle them to relief.  See Kim, 340 F. Supp. 2d at 393-94 ("Neither party has offered an explanation for the delay and as such, it cannot be said that [the plaintiff] will be unable to prove any set of facts, consistent with his allegations, entitling him to relief.").  Accordingly, the defendants' motion to dismiss is DENIED.

## Conclusion

For the reasons set forth above, the plaintiffs' motion to amend (Paper 22) and the defendants' motion for extension of time (Paper 24) are GRANTED.  The defendants' motion to dismiss (Paper 17) is DENIED.  The parties shall submit a proposed discovery schedule within 30 days.

Dated at Burlington, in the District of Vermont, this 4th day of September, 2007.

                    /s/ William K. Sessions III
                    William K. Sessions III
                    Chief Judge, United States District Court